IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PATRICIA O'NEIL,<br><br>          Plaintiff,<br><br>     vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration<br><br>          Defendant. | CV 16-14-M-DLC-JCL<br><br><br>FINDINGS AND RECOMMENDATION |

Plaintiff Patricia O'Neil brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. O'Neil applied for benefits in May 2011, alleging disability since August 1, 2005, due to chemical sensitivity, asthma, allergies and chronic fatigue. O'Neil's application was denied initially and on reconsideration, and she requested an administrative hearing. O'Neil represented herself at the

-1-

administrative hearing in June 2012. In July 2012, an ALJ issued a decision finding O'Neil not disabled within the meaning of the Act. The Appeals Council granted O'Neil's request for review, and the matter was remanded for further proceedings. O'Neil appeared with counsel at the hearing on remand in January 2014. In April 2014, the ALJ issued a decision finding O'Neil not disabled within the meaning of the Act. The Appeals Council denied O'Neil's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

O'Neil was 53 years old at the time of hers alleged onset date, and 62 years old at the time of the ALJ's decision in April 2014.

## I.     Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ

will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

The ALJ found at step one that O'Neil last met the insured status requirements of the Act on December 31, 2010, and had not engaged in substantial gainful activity from her August 1, 2005, alleged onset date through her date last

insured. (AR 29). At step two, the ALJ found that O'Neil had the following severe impairments: multiple chemical sensitivity syndrome and chronic fatigue syndrome. (AR 29). The ALJ concluded at step three that O'Neil did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (AR 30). The ALJ found O'Neil's subjective testimony only partially credible, and determined that she had the residual functional capacity to perform a reduced range of light work. (AR 31). At step four, the ALJ found that O'Neil was capable for performing past relevant work as a cashier and claims processor. (AR 36). The ALJ therefore concluded that O'Neil was not disabled within the meaning of the Act at any time from her August 1, 2005, alleged onset date through December 31, 2010, the date she was last insured.

### A. Medical Opinions

O'Neil argues the ALJ erred by not giving more weight to opinions provided by her treating physicians. A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

    1.    Dr. Elizabeth White

O'Neil established care with primary care physician Dr. Elizabeth White in June 2010, at which time she reported a history of asthma and chemical sensitivity. (AR 523). O'Neil expressed frustration over being "ill so often" but was experiencing "no symptoms really" at that time. (AR 523). The next record from Dr. White is of a follow up visit more than a year later, in November 2011. (AR 550). O'Neil reported feeling very tired and having asthma-like symptoms after

exposure to scents. (AR 550). She told Dr. White than on good days she could work in the yard for a couple of hours, but on other days she could not get of bed. (AR 550). O'Neil followed up with Dr. White next in early April 2012, and again reported multiple chemical sensitivities, with perfumes being the worst, causing shortness of breath and fatigue. (AR 548, 560). O'Neil described sleeping for several days particularly after an exposure, isolating herself, and feeling depressed. (AR 560).

After their April 6, 2012, visit Dr. White wrote a letter in support of O'Neil's application for disability benefits. (AR 548, 547). Dr. White wrote that O'Neil experienced asthmatic type symptoms and extreme fatigue with exposure to multiple common scents. She explained that O'Neil isolated herself to avoid exposure, resulting in disabling depression. Dr. White stated that in her opinion, O'Neil was disabled as a result of her multiple chemical sensitivity syndrome and chronic fatigue syndrome. (AR 547).

O'Neil argues the ALJ did not provide sufficiently specific and legitimate reasons for discounting Dr. White's opinion, as set forth in her April 6, 2012, letter.[1] But review of the ALJ's decisions shows otherwise. The ALJ gave Dr.

---

[1] Because Dr. White's opinion was contradicted by that of the state agency reviewing physician, the ALJ was only required to give specific, legitimate reasons supported by substantial evidence. See *Bray v. Commissioner*, 554 F.3d 1219, 1228

–7–

White's assessment little weight primarily because it was not consistent with her own treatment records. (AR 33). Dr. White examined O'Neil only a few times during the relevant period, and as the ALJ noted, her physical examinations were consistently benign. (AR 33, 523, 548,550). The ALJ permissibly discounted Dr. White's opinion that O'Neil was disabled because it was not consistent with her own treatment notes, which uniformly showed normal physical examinations. See *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (An ALJ "may discredit treating physicians' opinions that are conclusory, brief and unsupported by the record as whole...or by objective medical findings.").

To the extent Dr. White wrote in the April 2012 letter that O'Neil was "disabled" and should get disability benefits, the ALJ permissibly pointed out that the issue of disability is for the Commissioner to decide. (Tr. 45). *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are never entitled to any special significance); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

  2. <u>Dr. Curt Kurtz</u>

In October 2012, O'Neil saw family practice physician Dr. Curt Kurtz for her multiple chemical sensitivities and chronic fatigue. (AR 555-559). O'Neil

---

n. 8 (9th Cir. 2009).

reported having "a lot of brain fog" and "lots of fatigue" after exposure to certain environmental chemicals and smells. (AR 565). On physical examination, Dr. Kurtz observed "breath sounds" and noted that O'Neil "coughed a lot when evaluated for lungs." (AR 566). Based on that initial visit, Dr. Kurtz completed mental and physical capacity assessments forms and wrote a letter in support of O'Neil's disability application. (AR 552-59). On the mental assessment form, Dr. Kurtz indicated that O'Neil had a number of moderate and marked limitations and "no ability to focus due to brain fog." (AR 552). On the physical assessment form, Dr. Kurtz limited O'Neil to light work with postural, environmental, and manipulative limitations. For example, he indicated that O'Neil could stand and/or walk for less than two hours in an eight hour work day, and wrote that her brain fog prevented her from decision making and "having environmental exposure in the work place." (AR 555-56). In his accompanying letter, Dr. Kurtz wrote that due to O'Neil's chemical sensitivities and chronic fatigue, "which can be aggravated by perfumes, hair spray, after shave, or any other chemicals found in an office, she will never be able to work an 8 hour day 5 day a week job." (AR 559).

O'Neil argues the ALJ did not provide sufficiently specific and legitimate reasons for giving Dr. Kurtz's opinion little weight. But the ALJ's decision again

shows otherwise. The ALJ found there was "only a single treatment note from Dr. Kurtz in the record and it certainly does not support his opinions." (AR 34). This was a fair statement. As noted above, the primary physical findings from Dr. Kurtz's one visit with O'Neil were that she displayed breath sounds and coughed when her lungs were examined. (AR 34, 566). The ALJ reasonably rejected Dr. Kurtz's opinion as the disabling severity of O'Neil's impairments because it was not consistent with or supported by his own examination.

The fact that the ALJ noted there was only a single treatment note from Dr. Kurtz in the record suggests he also took the short nature of the treatment relationship into account in determining how much weight to give to his opinion. This too was a permissible reason for giving Dr. Kurtz's opinion less weight. See 20 C.F.R. §§ 404.1527, 416.927 (length of the treatment relationship is relevant for purposes of determining how much weight to give to a medical opinion).

The ALJ further found that Dr. Kurtz's October 2012 opinion was entitled to little weight because it was provided nearly two years after O'Neil's insured status expired in December 2010. The ALJ reasonably gave Dr. Kurtz's opinion diminished weight because he had not examined O'Neil during the relevant time period and did not undertake to assess her limitations until two years after her

insured status had expired. The ALJ thus provided sufficiently specific and legitimate reasons for rejecting Dr. Kurt's opinion.[2]

### B.  Credibility

O'Neil contends the ALJ did not provide sufficiently clear and convincing reasons for discrediting her testimony. If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). O'Neil met her initial burden because she provided evidence that she has underlying impairments that could reasonably be expected to produce the symptoms alleged, and the ALJ did not find that she was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for finding O'Neil's subjective testimony only

---

[2] To the extent O'Neil suggests the ALJ erred by not specifically discussing medical records provided by Dr. Charles Jackson, the Court is not convinced. Dr. Jackson saw O'Neil five times between August 1997 and October 1997. (AR. 543-45). But because Dr. Jackson's records preceded O'Neil's August 2005 alleged onset day by eight years, the ALJ was not required to specifically discuss them.

partially believable.

The ALJ began by summarizing O'Neil's testimony at the two administrative hearings. (AR 32). As the ALJ noted, for example, O'Neil testified that she had problems breathing around certain triggers, particularly cologne and perfume. O'Neil testified that after being exposed to an irritant, she feels like she has been "run over by a steamroller or hit by a Mack truck" and sleeps for days at a time. (AR 56). O'Neil said that her symptoms worsened after 2005, and her fatigue is so severe that she feels "wiped out" after doing dishes.

The ALJ first found that O'Neil's allegations of extreme functional limitations were not supported by the longitudinal medical evidence. (AR 35). While O'Neil alleged severe breathing problems and extreme fatigue, her physical examinations were consistently normal and there were few if any objective findings to corroborate her allegations. While subjective testimony cannot be rejected based solely on the lack of objective medical evidence, it is one relevant factor for the ALJ to consider when assessing credibility. *See e.g. Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also pointed out that while O'Neil claimed her chemical sensitivity symptoms had gotten worse since 2005, there had been no change in any of the

objective findings and the medical records did not show any deterioration or additional medical difficulties. (AR 35-36). The medical records in this case are relatively sparse, and as the ALJ legitimately observed, they do not corroborate O'Neil's testimony that her symptoms had gotten worse since 2005.

The ALJ next noted that while O'Neil testified she could not work due to her chronic fatigue and chemical sensitivity, her former supervisor stated that O'Neil had not had any problems once she began using an air filter. (AR 36). The ALJ reasonably found the fact that O'Neil had been able to work on a sustained basis, even with the impairments she alleged were disabling, undermined her credibility. See *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988).

Finally, the ALJ found that O'Neil's activities of daily living were not consistent with her alleged exertional limitations. While O'Neil testified that she suffered from debilitating fatigue, the ALJ noted that she grocery shopped about once a week, visited her aunt once a month, visited Glacier National Park every few months, and was able to clean her house with natural cleaning supplies. (AR 32, 89-93). While these activities are not indicative of the ability to work on a sustained basis, the ALJ reasonably found they were not entirely consistent with the O'Neil's allegations of debilitating exertional limitations.

In sum, the Court finds the ALJ provided sufficiently clear and convincing reasons for finding O'Neil's subjective testimony only partially believable.

### C. Lay Witnesses

O'Neil next argues the ALJ did not cite germane reasons for discounting lay witness testimony and statements provided by a friend and two aunts.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's

failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Two of O'Neil's aunts submitted third party function report forms in support of her application for disability benefits. (AR 365-82). They wrote that O'Neil avoided social or public gatherings, and spent most of her time sleeping and watching television. The ALJ considered both statements, but gave them little weight because their comments were not consistent with the preponderance of the medical evidence. As discussed above, the medical records reflect that O'Neil's physical examinations were consistently normal. The ALJ also discounted their written statements because they had not seen or personally observed O'Neil for the period of time after her alleged onset date when she still lived in Washington, and even after she moved to Montana did not see her often. (AR 35). O'Neil testified that she did not see her aunts frequently and rarely attended family gatherings. One aunt indicated that she saw O'Neil once every two or three months, and the other wrote that she saw her for two hours every month. (AR 365, 374) . The ALJ legitimately gave their statements less weight because they did not see or observe

O'Neil on a daily or frequent basis. These were sufficiently germane reasons for discounting the two aunts' statements.[3]

The ALJ also discounted testimony provided by a third lay witness at the June 2012 administrative hearing. O'Neil's friend, Cynthia Perry, testified that she had known O'Neil for about five years, and spoke with her frequently on the phone. She said that she had witnessed O'Neil have respiratory attacks caused by chemical odors, and that those attacks had become more frequent and severe. She stated that she did not think O'Neil would be able to work. (AR 100-05).

The ALJ discussed Perry's testimony separately, but discounted it for essentially the same reasons – that it was not supported by the objective medical evidence, and because she only saw O'Neil once every few months. (AR 34, 91). These were germane reasons for discounting Perry's testimony as to the debilitating extent of O'Neil's symptoms.

---

[3] The ALJ also discounted the aunts' statements in part because they were not medically trained and had not seen O'Neil in a professional capacity. This was not a legitimate reasons for rejecting lay witness testimony. *See e.g. Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) 12 F.3d at 919; *Bruce v. Astrue*, 557 F.3d 1113, 1116 & n. 1 (9th Cir. 2009) (fact that a lay witness is not a medical or vocational expert does not disqualify her from stating an opinion as to how the claimant's condition affects his ability to perform basic work activities). But because the ALJ otherwise provided germane reasons for giving their statements little weight, this was harmless error.

### D. Vocational Expert

Finally, O'Neil argues the ALJ erred in finding she could perform past relevant work as a claims processor or cashier because the residual functional capacity assessment and corresponding hypothetical he posed to the vocational expert did not incorporate the the limitations identified by her supervisor, Sylvia Chen. Chen submitted a written statement explaining that O'Neil's employer accommodated for her sensitivity to perfume and other fragrances by assigning her an office work space where she could use an air filter. (AR 384-85).

The ALJ gave Chen's statement great weight, noting that she worked with O'Neil for six years and saw her on a daily basis. The ALJ found that Chen's statements were consistent with a finding that O'Neil could return to work with certain environmental limitations. (AR 35). The ALJ incorporated those limitations into the functional capacity assessment and found that O'Neil should "avoid even moderate exposure to fumes, odors, dust and gases." (AR 31). This was sufficient to account for Chen's statement. Even if the ALJ should have also included the need to use an air filter in the residual functional capacity assessment, any error was harmless because the vocational expert testified that the use of an air filter was not unusual for a work setting. (AR 67-68).

O'Neil also argues the ALJ erred by not incorporating all of the limitations to which she and the lay witnesses testified. But because the ALJ properly discredited O'Neil's testimony and properly weighed the medical evidence, he was not required to include those limitations. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). Substantial evidence of record supports the ALJ's assessment of O'Neil's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert.

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

DATED this 17th day of February, 2017.

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge